**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PIONEER HOTEL, INC., d/b/a PIONEER HOTEL )<br>AND GAMBLING HALL, )<br>)<br>Defendant. )<br>_____ ) | Case No. 2:11-cv-01588-LRH-GWF<br><br>**ORDER**<br><br>**Defendant's Motion to Compel - #86** |

       This matter is before the Court on Defendant's Motion to Compel (#86), filed on August 18, 2014. The Plaintiff filed its Response (#97) on September 4, 2014 and the Defendant filed its Reply (#103) on September 17, 2014. The Court conducted a hearing in this matter on September 23, 2014. During the hearing, the Court ruled on certain portions of Defendant's motion which are reflected in the Minutes of Proceedings. This order addresses that portion of Defendant's motion that the Court took under submission.

**BACKGROUND**

       The EEOC has brought this action on behalf of Charging Party Raymond Duarte and a class of similarly situated individuals who were allegedly subjected to harassment based on their national origin, Latino, and/or their skin color, dark. Defendant asserts that the EEOC did not identify or investigate the claims of several individual class members prior to the conclusion of efforts at pre-suit conciliation, or prior to the commencement of this lawsuit, and is therefore barred from pursuing claims on behalf of those class members in this lawsuit. In furtherance of this defense, Defendant seeks information and documents relating to the EEOC's post-conciliation

communications with potential class members. Defendant's discovery requests relating to this issue are as follows:

**Interrogatory No. 16:**

If EEOC has contacted (or any attorney, investigator, or other person acting on your behalf has contacted) any current or former employee of Pioneer since conciliation failed on or about August 2, 2011, in connection with EEOC's Second Amended Complaint, e.g., attempting to determine if such persons were subjected to conduct complained of in the Second Amended Complaint and inquiring as to their participation as a class member in the lawsuit, etc., please state with respect to each such person, his or her name, last known address and telephone number, job title, employer, the date, time, place and means of communication, the substance and detail of any such communication, and describe any and all documents, electronic media, electronically stored information, or social networking sites, in, on or through which communications with such persons are contained.

**Request for Production No. 11:**

Identify and produce all letters, emails, questionnaires, memoranda, or other documents evidencing EEOC's communications and/or attempted communications with current and former Pioneer employees that relate to or arose out of Raymond Duarte's Charge of Discrimination, or relate to EEOC's attempts to locate and identify a class for participation in the pending lawsuit against Pioneer, since conciliation of Raymond Duarte's Charge of Discrimination failed, on or about August 2, 2011.

**Request for Production No. 18:**

Identify and produce all letters, emails and other written communications , and any attachments thereto, sent from any representative of the EEOC to any current or former Pioneer employee, and/or a Pioneer representative, since conciliation failed on August 2, 2011 to the present.

**Request for Production No. 33:**

Identify and produce all documents that reflect, relate to, discuss, summarize, or constitute EEOC's efforts to locate and identify class members during the pendency of Raymond Duarte's Charge of Discrimination through conciliation, which terminated on August 2, 2011, as described in Interrogatory No. 15.

**Request for Production No. 34:**

Identify and produce all documents that reflect, relate to, discuss, summarize, or constitute EEOC efforts to contact current or former Pioneer employees after conciliation failed on August 2, 2011, in connection with EEOC's Second Amended Complaint, e.g., attempting to determine if any such persons were subjected to the

1          conduct complained of in the Second Amended Complaint and
2          inquiring as to their participation as a class member in the lawsuit, as described in response to Interrogatory No. 16.

3          The EEOC objected to these discovery requests on a number of grounds, including that the requests are over broad and burdensome, vague, ambiguous and confusing, and seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or the governmental deliberative process privilege. The EEOC also asserted that it is prohibited by law from disclosing or using as evidence any information pertaining to its informal methods of conference, conciliation or persuasion of a charge of discrimination brought before it under 42 U.S.C. § 2000e-5)(b). The EEOC also objected to producing any information from the social networking profiles or accounts of the claimants on the grounds that it is an invasion of privacy and exceeds the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure. *See* EEOC's Response to Interrogatory No. 16. In its response to Requests for Production Nos. 11 and 18, the EEOC stated that "Defendant has refused to answer EEOC's discovery requests to provide an employee list thereby prejudicing the EEOC's ability to identify each and every witness and/or class member on whose behalf the EEOC may lawfully seek relief." The EEOC objected to Request Nos. 33 and 34 to the extent the requests seek documents in the possession, custody or control of the Defendants. *See Motion to Compel (#86), Exhibit 8*.

Defendant argues that the foregoing interrogatory and requests for production[1] seek only facts regarding the extent and timing of the EEOC's efforts to locate a class and therefore do not impinge on the deliberative process privilege. Defendant further asserts that "[w]hen the EEOC brings a Title VII suit, '[a]n attorney-client relationship does not exist across an entire potential class merely when the EEOC file[s] a case and identifi[es] a class.' *EEOC v. ABM Industries Inc.*, 261 F.R.D. 503, 508 (E.D.Cal. 2009) (citations omitted). Thus, it cannot operate to prevent discovery regarding the EEOC's efforts to identify and locate class members. *See EEOC v. CRST Van Expedited*, 2009 WL 136025, at *6 (N.D. Iowa 2009)." *Motion to Compel (#86), pgs. 16-17*.

---

[1] Defendant does not actually refer to Request for Production Nos. 33 and 34 in its argument. However, the subject of these requests appear to relate to the same subject matter.

The EEOC argues, however, that its written or oral communications with claimants or potential claimants occurred on or after the day this lawsuit was filed, were conducted or obtained in anticipation of litigation, and are therefore protected from disclosure by the work-product doctrine. The EEOC also asserts the attorney-client privilege with respect to its communications with the claimants who it represents as class members in this lawsuit. The EEOC has submitted a privilege log for (1) a letter sent to employees of Defendant's Housekeeping Unit to Call re: Entitlement to Monetary Relief; (2) Notes of Interviews by EEOC Attorneys and Paralegal with employees of Defendant's Housekeeping Unit about discrimination at Defendant's hotel; and (3) Emails between EEOC Attorney and Claimant Kelli Duarte. The EEOC asserts the attorney-client privilege, the attorney work-product doctrine, and the common interest privilege as to each document. *Plaintiff's Response (#97), Exhibit 5.*[2]

## DISCUSSION

In its order granting the EEOC's motion for protective order regarding the depositions of its investigators, this Court held that the EEOC is not precluded from pursuing relief on behalf of class members who were not identified by the EEOC prior to the filing of this lawsuit. *See Order (#107), pgs. 7-10. See also E.E.O.C. v. Evans*, 872 F.Supp.2d 1107, 1110-12 (E.D.Wash. 2012). Therefore, whether the EEOC identified or investigated the claims of particular class members before or after conciliation failed, or this lawsuit was filed, is not relevant and the Court will not order production of the requested information or documents on that basis. The interrogatory response and documents requested by Defendant may provide information that is otherwise relevant, such as information about the claimant's allegations of harassment, alleged injuries and damages, or impeachment information. The EEOC represents, however, that all communications between it and class members occurred on or after the date the EEOC commenced this action and are therefore protected from discovery by the work-product doctrine or the attorney-client privilege. . . .

---

[2] It is the Court's understanding that the EEOC has produced those portions of its investigator's notes of interviews, questionnaire responses received from class members or other investigation documents that contain factual information which was obtained during the EEOC's pre-suit investigation.

### 1. **Work-product doctrine.**

The party asserting the work-product doctrine privilege has the burden of establishing the rule's application to each document for which the privilege is asserted. *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 699 (D.Nev. 1994), citing *Conoco Inc. v. United States Dept. of Justice*, 687 F.2d 724, 728 (3rd Cir. 1982) (FOIA case). The work-product doctrine generally protects from discovery by the opposing party information or documents that were prepared by or for a party in anticipation of litigation or for trial. *E.E.O.C. v. The Pasta House Co.*, 1996 WL 120648, *3 (E.D.Mo. 2012), citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947) and Rule 26(b)(3) of the Federal Rules of Civil Procedure. The test for determining whether materials were prepared in anticipation of litigation is "'whether in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *E.E.O.C. v. International Profit Associates, Inc.*, 206 F.R.D. 215, 220 (N.D.Ill. 2002).

"There are two types of work product, ordinary work product and opinion work product." *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 647 (E.D.Cal. 2010). The court, quoting *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) further states:

> Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for materials and the party cannot obtain the substantial equivalent by other means. In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney has engaged in illegal conduct or fraud.

*Id.*

The court in *E.E.O.C. v. International Profit Associates, Inc.*, 206 F.R.D. at 220, found no difficulty in holding that the work-product doctrine applies to interviews obtained at the direction of the EEOC's attorney after the date the complaint was filed. The court in *E.E.O.C. v. CRST Van Expedited, Inc.*, 2009 WL 136025, *4 (N.D.Iowa 2009) also states that "statements and notes of interviews of non-parties" are protected work product. The court in *U.S. S.E.C. v. Talbot*, 2005 WL 1213797, *1 (C.D.Cal. 2005), stated that an attorney's notes and memoranda of witnesses' oral

statements constitute opinion work product because "when taking notes an attorney focuses on those facts she deems legally significant."

The court in *E.E.O.C. v. The Pasta House Co.* also held that work-product protection applies to questionnaire responses received from class members. The court, however, required the EEOC to identify the class members who filled out questionnaire responses, stating that "[t]his would protect plaintiff from revealing work product but would also give defendant an opportunity to obtain information by sending out its own questionnaire." 1996 WL 120648, at *3. *See also E.E.O.C. v. Carrols Corp.*, 215 F.R.D. 46, 51 (N.D.N.Y 2003) (holding that questionnaire responses obtained by the EEOC from claimants or witnesses in anticipation of litigation are protected by the work-product doctrine). In *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. at 647-48, the court held that the questionnaire responses contained some opinion work product because the questions were administered orally by the plaintiff's representative and because the persons who answered the questions did not complete or review the questionnaires. Other portions of the questionnaire responses contained verbatim statements by the third parties which was ordinary work product. The defendant failed to demonstrate substantial need for those portions of the questionnaires that constituted only ordinary work product and its motion to compel was therefore denied. *Id.* at 649.

The EEOC's privilege log, while sketchy, is sufficient to support the application of the work-product doctrine to the notes of post-litigation employee interviews conducted by the EEOC's attorneys and paralegal and to the post-litigation emails between the EEOC's attorney and claimant Kelli Duarte. As stated above, the attorney's or paralegal's interview notes are considered opinion work product which are entitled to almost absolute immunity from discovery. The same is also likely true with regard to email communications between EEOC counsel and Ms. Duarte. However, even if these constituted only "ordinary" work product, Defendant has not shown a

. . .

. . .

. . .

. . .

substantial need for their production. Defendant's motion to compel with respect to these documents will therefore be denied on the basis of the work-product doctrine.[3]

In *E.E.O.C. v. CRST Van Expedited, Inc.*, the court held that solicitation letters or oral communications made to prospective class members in order to induce their participation in the lawsuit were attorney-work product because they were prepared in anticipation of litigation. The court stated, however, that the solicitation letters appeared to be "ordinary work product" in that they did not contain counsel's "mental impressions" or legal theories. *Id.*, citing *Baker v. General Motors Corp.*, 209 F.3d at 1054. The court stated that the representations made to prospective class members in the solicitation letters were relevant to the claimants' credibility. The court also held that the defendant had a substantial need for the solicitation letters because it could not obtain the same information by other means. The court in *In the Matter of Bertucci Contracting Co.*, 2014 WL 2204086, *8 (E.D.La. 2014) held, however, that statements made during a solicitation meeting to which only clients and prospective clients were invited to discuss their rights under state and federal law was protected from discovery by the attorney-client privilege. The court distinguished *E.E.O.C. v. CRST Van Expedited, Inc.* and similar cases which addressed solicitation letters sent to non-clients or to statements made during a solicitation meeting that was open to the general public.

The EEOC has sufficiently shown that "the letter sent to employees of Defendant's Housekeeping Unit to Call re: Entitlement to Monetary Relief" was sent in anticipation of litigation and therefore is within the scope of the work-product doctrine. The EEOC has not made any showing, however, that the solicitation letter contains the mental impressions or theories of the EEOC's lawyers about the case such that it should be considered "opinion work product." The EEOC has also not shown that it made efforts to distribute the letter in such a manner that it was not reasonably likely that copies of the letter would be provided to Defendant. *E.E.O.C. v. ABM Industries, Inc.*, 261 F..D. 503, 512 (E.D.Cal. 2009). Defendant's counsel represented at the

---

[3] The EEOC has not indicated that it sent written questionnaires or received written responses thereto from class members after the lawsuit was filed. No written questionnaire documents are listed in the privilege log and the Court therefore infers that there are no questionnaire documents responsive to Defendant's discovery requests. If this is not correct, the EEOC is ordered to promptly inform the Defendant and the Court.

1  hearing that Defendant was provided with one of the letters by an employee who received it.  The
2  Defendant has substantial need for the letter for impeachment.  It cannot obtain the same by other
3  means.  The Court therefore finds that this letter is not entitled to protection under the work-
4  product doctrine.

**2.   Attorney-Client Privilege.**

As stated in *Harter v. CPS Security (USA), Inc.*, 2013 WL 3108947, *4-5 (D.Nev. 2013):

> The Ninth Circuit has adopted Dean Wigmore's articulation of the elements of the attorney-client privilege:  (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived.  *In re: Fischel,* 557 F.2d 209, 211 (9th Cir. 1977); *Admiral Insurance Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir. 1989).
>
> "The burden is on the party asserting the privilege to establish all the elements of the privilege."  *United States v. Martin,* 378 F.3d 988, 999–1000 (9th Cir. 2002).  The party asserting the attorney-client privilege must establish the attorney-client relationship and the privileged nature of the communication.  *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir. 1997).  A party claiming the attorney-client privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."  *Martin,* 278 F.3d at 1000.  Blanket assertions of attorney-client privilege are "extremely disfavored."  *Id.*  Additionally, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *Id.*  "The fact that a person is a lawyer does not make all communications with that person privileged." *Id.* at 999.  The party asserting the privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold.  *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir. 1992).

Courts have recognized an attorney-client relationship between EEOC counsel and the claimants whose interests the EEOC seeks to protect in the litigation.  *E.E.O.C. v. International Profit Associates, Inc.*, 206 F.R.D. 215, 219 (N.D.Ill. 2002); *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D.Ill. 1990);  *E.E.O.C. v. Chemsico, Inc.*, 203 F.R.D. 432, 433 (E.D.Mo. 2001); *E.E.O.C. v. Tony's Lounge, Inc.*, 2010 WL 1444874, *2 (S.D.Ill. 2010) ("Courts have recognized that when the EEOC brings suit 'there does not appear to be any formal attorney-client relationship,' but the EEOC's attorneys are 'acting as *de facto* counsel for the employees.'").

. . .

In *E.E.O.C. v. Chemtech Int'l Corp.*, 1995 WL 608333 (S.D.Tex. 1995), the court held that there was an attorney-client relationship between the EEOC and the charging party who had intervened in the action through his own retained counsel. The court stated:

> In the instant case, while the interests of the EEOC and Mr. Puga are not identical, this Court finds that Mr. Puga is acting in a client capacity with the EEOC attorneys because the EEOC is representing Mr. Puga's interest in the lawsuit. The communications between the EEOC attorneys and Mr. Puga were in connection with and pertained to the EEOC's prosecution of the lawsuit. Furthermore, through an affidavit, Mr. Puga recites his belief that an attorney-client relationship existed between himself and the EEOC attorneys, and that their confidential communications were protected from disclosure.

1995 WL 608333, at *2.

In *E.E.O.C. v. HBE Corp.*, 1994 WL 376273, *2 (E.D.Mo. 1994), the court held that the EEOC and the charging party had a common interest in the litigation to vindicate the alleged violation of the charging party's rights. The charging party also provided an affidavit stating that he sought legal advice from the EEOC's counsel with the understanding that the communication would be confidential. Based on this, the court upheld the assertion of the attorney-client privilege with respect to the communications between the EEOC attorney and the charging party.

In *E.E.O.C. v. ABM Industries, Inc.*, 261 F.R.D. 503 (E.D.Cal. 2009), the court held that a solicitation letter and form questionnaire sent to prospective class members were not protected by the attorney-client privilege. In so holding, the court stated:

> The facts in the motion at bar differ so dramatically from the facts before the *International Profit Associates* court that the holding in *International Profit Associates* is not useful here, let alone persuasive. There, the communications sought were notes taken by the EEOC from persons who had expressly stated their desire to be represented by the EEOC, in matters germane to the lawsuit, at the time the notes in dispute were created. Here, the correspondence was sent to a broad class of persons, most of whom—at least according to the proof presented in connection with this dispute—had not asked the EEOC to represent them in the underlying action at the time the cover letter and questionnaire were sent. Furthermore, the cover letter involved in this case does not make clear that its purpose was to solicit responses *only* from persons who wanted to be represented by the EEOC in the underlying action. A fair reading of this letter permits its reader to conclude that the EEOC might also be attempting to identify non-victim witnesses for use in the prosecution of its case.

> At its core, the EEOC's argument regarding the existence of an attorney-client relationship relies solely on the fact that it sent the letter in order to further develop the group of claimants on whose behalf it sued. That is not enough. The mere fact that the letter and questionnaire was sent to a group of potential claimants (and/or witnesses) does not suffice to create the privileged professional relationship. As noted in *EEOC v. Collegeville/Imagineering Ent.,* 2007 WL 158735 at *1, 2007 U.S. Dist. LEXIS 3764 at *2–3 (D.Ariz. 2007), when the EEOC brings a Title VII suit, "[a]n attorney-client relationship does not exist across an entire potential class merely when the EEOC file[s] a case and identifi[es] a class" (citations omitted).

261 F.R.D. at 508.

The court in *ABM Industries* also distinguished *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, on the grounds that "the primary purpose of the sought-after letter from the EEOC to this group of former employees was to ask if they wished to be represented by the EEOC in its separate action and, if so, to complete the questionnaire." 261 F.R.D. at 508. The court noted that there was no adequate showing in the case before it that the EEOC expressly offered the recipient the EEOC's legal services. *Id.*

The court in *ABM Industries* also relied on *E.E.O.C. v. Republic Services, Inc.,* 2007 WL 465446,*2 (D.Nev. 2007), in which Magistrate Judge Leavitt held that the EEOC failed to meet its burden to show that a solicitation letter sent to potential class claimants was privileged. Judge Leavitt noted that "the Letter does not explicitly offer the EEOC's services, it indicates only that it wishes to determine if the recipient may be a witness or have a viable claim that could be pursued in this litigation. Though the idea of representation may be implied in the Letter, it is not its stated purpose." *Id.* Judge Leavitt also noted that when courts have found that an attorney-client relationship exists, the potential class members must have taken some affirmative step to enter into a relationship with the EEOC, such as when the individual contacted the EEOC through questionnaires and phone calls, consulted with the EEOC with the intent to seek legal advice, or signed an affidavit stating a belief that an attorney-client relationship existed. *Id.*

As in *E.E.O.C. v. ABM Industries* and *E.E.O.C. v. Republic Services, Inc.*, the EEOC has made no showing that the letter sent to employees of Defendant's Housekeeping Unit to Call re: Entitlement to Monetary Relief contained any explicit offer of EEOC legal representation or that

other circumstance exist with respect to the letter and communications with the class members that would support the application of the attorney-client privilege. The burden is on the EEOC to establish all elements of the attorney-client privilege. Because it has not met its burden with respect to the letter, the letter is not protected from disclosure by the attorney-client privilege.

## CONCLUSION

Based on the foregoing, the Court denies Defendant's motion to compel in regard to notes of interviews by the EEOC attorneys and paralegal with employees of Defendant that occurred after the EEOC filed its lawsuit in this action, and in regard to the emails between the EEOC attorney and Claimant Kelli Duarte on or after the date the lawsuit was filed. The Court, however, grants the Defendant's motion to compel with respect to the letter that the EEOC sent to employees of Defendant's Housekeeping Unit to Call re: Entitlement to Monetary Relief. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel (#86) is **granted**, in part, and **denied**, in part, in accordance with the provisions of this order.

**IT IS FURTHER ORDERED** that the Plaintiff shall produce to Defendant the letter sent to employees of Defendant's Housekeeping Unit to Call re: Entitlement to Monetary Relief within ten (10) days from the date of this order.

DATED this 6th day of October, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge